Good morning and welcome to this week's Oral Arguments in Atlanta. We have four cases to hear today. Before we begin, just a reminder about our court traffic light system for timing your arguments. When the light turns yellow, you have two minutes remaining in your allotted time, and when the light turns red, we ask you to promptly conclude your remarks unless you're in the process of answering a question from the court, and then you may finish your is number 2213776, Alabama Aircraft Industries, Inc. v. Boeing Company. Ms. Daniel, I see you've reserved five minutes for rebuttal. Is that correct? Correct, Your Honor. You may begin when you're ready. May it please the Court, I'm Laurie Rose Daniel, representing Alabama Aircraft, also known as PEMCO. In its earlier appeal, this Court reversed the dismissal of PEMCO's intentional statutory trade secrets claim, but on remand, the district court dismissed it again, and there are several reasons why that order also should be dismissed. First, the MOA is dead. Only the teaming agreement, the MOA, had a limitation of liability clause, not the NDA, and in PEMCO 1, the first opinion of this Court in the earlier appeal, the Court looked only to the language of the NDA because it found that Boeing had forfeited its unified contract theory, and that is the law of the case. The language of the MOA has no bearing on the MUTSA claim. Regardless, the MOA, and this is undisputed, the MOA terminated before Boeing misused PEMCO's trade secrets, and because the MOA had ended, it does not impact Boeing's subsequent wrongdoing. Didn't the district court previously decide that the NDA was incorporated into the MOA so that they were essentially one contract? It did in its summary judgment ruling. Prior to that, and also in that ruling, the district court found that the limitation of liability clause did not apply to torts. There was no reason to appeal that when Boeing, in the district court, the district court itself always maintained that the limitation of liability clause in the MOA did not reach torts, and in fact, even in PEMCO 1 in this appeal, Boeing kept that same position and said that the trade secrets claim had nothing to do with the contracts. So, that is true, Your Honor, but also if you look at the text and the context of the limitation of liability clause, you'll see that in section 11.1 of the MOA, the stated purpose of that clause is to define remedies for a breach of contract. The defining terms of that clause are entirely couched in terms of breach of contract, defining breaching party, non-breaching party. Moreover, it contains a somewhat limiting language, much more limited than what was in the NDA or even some other clauses in that MOA, and it addressed damages, unquote, under this contract. Now, Boeing knew how to say under this contract or under this agreement or related thereto, and that's a kind of broader language that the court looked to in PEMCO 1, but instead this says under this agreement. Now, in the immediately preceding paragraph, which addresses non-binding ADR, Boeing used a different language. In that paragraph, that paragraph addressed resolution of, quote, any dispute that arises under or is related to this MOA, okay? So, it's limited language in that contract. The context is breach of contract. But obviously, I mean, the Limitation of Liability Clause does disclaim categories of damages that include punitive and exemplary. It does not. It also does not reach unjust enrichment. It speaks in terms of the non-breaching party's losses, not the breaching party's unjust enrichment or profits, but let me speak to that. As Boeing's case turns on this sort of classic canon, there's a big problem. Actually, that guts their position, because under Missouri law, canons of construction do not come into play unless the contractual language is ambiguous. Settled law, there's Allen versus Conway. That's hardly unique to Missouri. It's not unique to Missouri, Your Honor, so I don't think I need to finish that case citation, but there is a case, Allen versus Continental. It's a Missouri case. All right. They don't come into play unless the language is ambiguous, and even as the Purcell opinion shows, and that's one of their cases that they love, a Limitation of Liability Clause must be strictly construed, and it is not enforceable unless the language is clear, unambiguous, unmistakable, and conspicuous. That's a quote. That's a quote from Purcell and other cases. Well, this reference to punitive damage is buried in the middle of this paragraph. It's not conspicuous, but it's also not unmistakable as to what it means. They, Boeing wants to say, it must mean the party's meant for it to reach intentional torts, and they rely on two very prominent authors of this book, Reading Law, but what they don't point out is that in that very same section on surpluses, surplusage canon, the authors point out that, well, sometimes drafters do include words that add nothing of substance. Why? They recognize, quote, to engage in the ill-conceived but lamentably common belt and suspenders approach. Lawyers piling on just to pile on words? Yes, it happens, lamentably common. So, you've got two reasonable interpretations of this, perhaps reasonable. I would say Boeing's is not reasonable, but there are at least two. A common practice or not, it's not conspicuous. It's certainly not unmistakable. So, canon of surpluses really doesn't help them because it really shows this is not unmistakable, their interpretation. Now, the fourth reason is independent statutory tort doctrine. This is recognized, the concurrence in the Purcell case, the justice recognized that that issue, in that case, that was a negligence issue, by the way. Clearly, negligent performance under the contract. There's been confusion, I think, in some of the cases and perhaps some of the arguments that have been made where people have confused willful breach of contract with an intentional tort. It's not the same thing. Yes, you can have a limitation of liability regarding a willful breach of contract if it's clear, unmistakable, but that's not the same thing as an independent statutory tort providing remedies for intentional violations of statutory duty. But if you look at your complaint, your complaint is all based on the contract terms. You're not saying that there's an independent basis. Sorry, but I do have to not agree with that because we're looking now at the post-remand complaint, not the complaint that was initially there. It's in that complaint, paragraphs 101, 106, 124. There was an agreement in place after the MOA terminated between the General Counsel at PIMCO and House Counsel at Boeing. There also was a firewall that was set up. You have MUTES itself imposing duties and remedies that did not even arise until after the MOA had terminated. And they're specific, they're independent duties separate and apart from the contractual obligations. It was not until Boeing misused that information that statutory claim arose and they violated those duties. There are also federal procurement regulations that apply. So we've listed that in the post-remand complaint. It's a lengthy document, but it is there. None of Boeing's cases enforced an independent statutory tort or anything involving an intentional tort. Per se on the budget performance, Liberty financially addressed a breach of contract, if you look at what they applied to. Jacobson, the only claim left in Jacobson in the Eighth Circuit was breach of contract because there was a directed verdict on the fraud and the jury regarding any kind of sophisticated party being able to disclaim a statutory statement or even talk about statutory remedies. NHB also addressed the holding in that case was performance of a contract. Again, we're not talking, you don't even need the NDA or the MOA for this. You can't recover the same damages you have before. And there's just absolutely no way the recovery goes out of the first row. Just out-of-pocket bid costs is the same thing as the value of the trade secrets that were misappropriated, which was valued at $100 million by an expert. Now, I'm going to take the remaining time for rebuttal, but I will say on this question of the difference between exculpatory and limitation of liability, if this clause is enforced, Boeing will be exonerated for 99% of the remedies under MUTA. If that's not exculpatory or exoneration, I don't know what is. I'd like to save the time. Good morning, Your Honors. May it please the Court, Katz and Mitchell for Boeing. Boeing and AAI were two sophisticated parties who entered into a teaming arrangement where they expressly contracted about the exchange of proprietary information. They also expressly contracted to disclaim certain categories of damages without regard to the underlying source. And they went further and disclaimed expressly punitive damages which are not available under Missouri law for non-contract claims. When this Court, after the first appeal, remanded for the District Court to determine whether the trade secrets claim may proceed, the District Court correctly applied contract interpretations, settled canons of contract construction, as well as Missouri law in applying limitation of liability provision to dismiss the trade secrets claim. This Court should affirm. I'd like to address some of the points raised by Ms. Daniel in argument. The first argument that she made was that the limitation of liability provision as part of the MOA was terminated. I have a few responses to that. First of all, that was an argument that was not raised in the District Court. If you look back in their District Court briefing, there was no mention of this termination argument. It was mentioned in a few sentences in their opening brief and really was the focus of their reply brief. So first of all, that argument is forfeited. Second of all... Counsel, you don't forfeit arguments. You forfeit issues and claims and defenses. So when you say they didn't make this argument, therefore this argument is forfeited. No. We have a duty to decide issues and claims that weren't forfeited, regardless of how bad the argument was below, or the fact that they overlooked an obvious flaw in the other side case, or the fact that a particular decision directly on point wasn't cited below. It's not arguments that are forfeited. It's issues and claims. Yes, Your Honor. It seems to me that the issue of whether the limitation of liability provision isn't applicable because it was terminated is its own issue. But even taking, if the court is willing to overlook that as not its own issue, but an argument in support of it... We're not, by definition, overlooking it since we're talking about it. Yes, Your Honor. When the court rules, and the court hasn't ruled anything, but if the court should disagree with you on that, that doesn't mean we've overlooked it. Yes, Your Honor. Yes, Your Honor. And let me just address the point on the merits then. So the first argument that I would make is that this MOA is never as a matter of law terminated. Boeing tried to terminate it, pursuant to 5.0c in the MOA. That was the entire argument in the first trial. And what the jury found was, no, Boeing did not terminate the agreement. Instead, the agreement is in force and has been breached. And when you're in a breach situation, obviously the limitation of liability provision applies. In addition, the parties were clear that their obligations with respect to proprietary information survived termination. And, Judge Pryor, you're exactly right that the district court held at summary judgment at document 445 that the NDA and the MOA are one contract. And so to the extent obligations with respect to proprietary information survived termination, the limitation of liability provision did as well. But what about the argument that this was an independent statutory tort that arose later? So I don't think that that's consistent with the record, nor do I think it changes the analysis. So if I could point to statements that AAI made in the last brief, they said, Boeing breached the NDA and it was that breach that was the means by which Boeing accomplished its misappropriation of trade secrets. What matters is that here it was the breach of the NDA contract that facilitated Boeing's misappropriation of PIMFO's trade secrets. And in addition, in the MTSA, in the definition section of improper means, it includes breach of a duty to maintain secrecy. So I don't think there's any daylight between the trade secrets claim that they're raising and the breach of the NDA agreement that was at issue. In addition, as to the point that this is an independent statutory tort and the court should analyze the application of the limitation of liability provision differently because of that, I would direct the court to Milfeld case. This is the Missouri Court of Appeals case where the court is almost on all fours with this case. There was a breach of contract claim and there were a number of other claims, including breach of the Missouri Uniform Trade Secrets Agreement. And what the court did in Milfeld, the Missouri Court of Appeals said, the parties have a liquidated damages provision and we're going to enforce that with respect to breach of contract. Then at the end of the opinion, they get to the trade secrets claim and the court says, you've disclaimed certain categories of damages that would otherwise be available under the statute and you've already recovered the liquidated damages for your breach of contract claim. So we're not going to allow you to double recover for your trade secrets claim. That's exactly what we have here with the distinction that that was a liquidated damages provision. This is a limitation of liability provision. But the ultimate analysis carries the same force. What about their argument that they're entitled to unjust enrichment remedy, which is not a damages remedy, strictly speaking? So it is, Your Honor. I mean, if you look at all of the... So it is what? It is a measure of damages that in this case is consequential. They have two theories for unjust enrichment. One are the profits that went to Boeing instead of the profits that went to PIMCO. That is the flip side of the same coin of lost profits, which the parties expressly disclaimed. And they disclaimed... Do you have a Missouri case saying that unjust enrichment is a form of consequential damage? I don't have a Missouri case that says that. Again, Milfeld enforced a liquidated damages provision on a trade secrets claim where unjust enrichment would have been available. It's probably the best Missouri case on point. Yeah, but the issue didn't come up and get decided in that case. Correct. But the argument that PIMCO... Isn't unjust enrichment a remedy started as equitable remedy to ensure that the wrongdoer doesn't profit as opposed to make the wrong done whole? It is. So why wouldn't that make it outside the limitation of liability damages owed to the victim of the breach? Because it's still consequential. And the categories of damages that the parties disclaimed were consequential damages, an example of which is lost profits. What is your best? Yeah. Lost profits is a damage that the victim of the breach has suffered. Unjust enrichment is not. It's different. It's hard to be a consequential damage when it's not a damage to the victim. I don't think so, Your Honor, because in order to calculate the unjust enrichment to Boeing, you'd have to... Whether or not Boeing was unjustly enriched turns on the consequence of the Air Force awarding Boeing the contract. It's the exact same consequence. I mean, it's the same bag of money with the different labels. Everything is a consequence of something. That doesn't help me, particularly since you haven't cited us in case that unjust enrichment is a form of consequential damages. Do you have a citation from anywhere? I would need to refresh. Nothing is coming to mind immediately. But I'll say part of that is because the only argument that PEMCO made with respect to unjust enrichment in their briefing is that it's not a contract damage. And once you hold and interpret the limitation of liability provision to apply to a tort claim, we're not in contract world. And I do think that consequential damages is broad enough to cover the consequence of Boeing having been unjustly enriched by the Air Force contract, which was not a direct result of the... So consequential damage is broad enough to cover everything? It's not broad enough to cover everything. What does it not cover? It doesn't cover direct damages. So in this case, the direct damages that they claimed in the last trial were their out-of-pocket bid costs, and they recovered those in the first trial. And if they were able to point to other direct damages, those may be recoverable. They haven't. And I don't think they disputed that the damages that they received in the first trial were direct. The consequential damages does carve out a significant number of damages, but it's not that it's exculpatory. And in fact, they received $2 million in the last trial for their out-of-pocket costs. So this is really no different from the Milfeld case or other cases where Missouri courts have enforced limitation of liability provisions with respect to tort claims. One of the points that Ms. Daniel made in her argument was that the parties in this provision said, under this agreement, and that somehow limits the scope of the limitation of liability provision to contract claims. But that is the exact language that the court expressly agreed that the limit liability, if any, of Executive Beechcraft under this agreement shall be limited to the cost of services performed hereafter. And the Missouri Supreme Court interpreted that language to extend to a related tort claim. So the fact that the parties here said under this agreement does not confine that provision's allocation only to tort claims. If I could also speak to the other point that Ms. Daniel made, which are the references to breaching party throughout the limitation of liability provision, that comfortably covers tortfeasors who are also in breach. As I quoted earlier, they've described their tort, their trade secrets claim using the language of breach. And in the last argument, in Ms. Daniel's rebuttal to this court, she argued that the contract and the tort claim are inextricably intertwined. You cannot separate the contract from the trade secrets claim. And so I think in that context where you have a case where the trade secrets claim turns on breach, that language is given effect in the limitation provision. Ms. Daniel also said that the inclusion of punitive damages, she suggests that was just belt and suspenders. I don't think that can be squared with the drafting history of the provision. AAI was the first party to propose a limitation of liability provision. They did not exclude punitive and exemplary damages. Boeing came back in a revision and added those terms to which AAI agreed. So I don't think that's just boilerplate language, in part because limitations of liability provisions take various forms across the cases. But as between these two parties, it's also not boilerplate. And one of the key teachings of this court in the last appeal was that you have to give every word meaning. And they're completely writing out of the limitation of liability provision, punitive and exemplary damages. The court interprets it to apply only to breach of contract claims. A couple of other points in the text that I'd like to emphasize. So in- oral argument mentioned that this would be completely exculpatory or almost exculpatory, that it would exonerate Boeing for about 99 percent of the claim damages from PIMCO. As we're looking at the case law here, as you pointed out in your opening statement, we do have sophisticated parties. Is our analysis on the public policy issue going to turn on that at all? So there's nothing in Missouri cases that say the percentage of the, you know, disclaimed damages somehow changes it. And just for, I mean, I haven't done exact percentages, but in Jacobson, they sought more than $12 million and recovered $175,000. I think the fact that they've been able to recover $2 million on this claim confirms that it's not exculpatory. And Missouri really does draw a bright line. I would like to add that for sophisticated parties, it's not even clear under Missouri law that they can't exculpate themselves. The Jacobson decision made that point that they were skeptical Missouri law even goes that far, because the Allick case both involved exculpation and involved consumers. And I'll note in the Allick case, when the court said you can't exculpate for intentional torts, it cited the Liberty financial decision. The Liberty financial decision, another Missouri Court of Appeals case that was cited by the Missouri Supreme Court in Allick, also had a contractual limitation of liability provision. And for the proposition that the parties could have exculpated for negligence, but not for willful or wanton conduct. We responded with part six of that opinion. You have to, it's a lengthy opinion. When you get to part six of the opinion, what the Missouri Court of Appeals did there is enforce an out-of-pocket loss cap on willful or wanton conduct. And then A, I didn't mention it again in its reply brief. And I think that's because the reading that Jacobson ascribes to that case. And if you look all the way down to part six, it is an example of Missouri courts enforcing limitation provisions against willful and wanton conduct. And Judge Carnes, to your question about whether there are cases that expressly deal with whether unjust enrichment damages are consequential. In these cases that limit damages to out-of-pocket losses or to liquidate, or not allowing them to recover any number of damages that might otherwise be available under law. So while we don't have a Missouri case that expressly stands for that proposition, there also isn't one that says they aren't available. And case after case in Missouri have applied limitation provisions to limit to direct damages or to out-of-pocket loss. Again, that's what happened in the Liberty financial case. The one other set of cases. Yeah, but unjust enrichment isn't a loss. It's a gain. That's correct. No, I'm talking about for the plaintiff. It isn't a gain for the plaintiff unless you persuade us somehow to turn the tables upside down. It isn't a gain for the plaintiff. What it is, is a gain for the defendant that the plaintiff wants to enforce an equitably enforceable tort, not tort, remedy that is designed to benefit the public by taking away from the wrongdoer the profit. That's, it originated in equity, not at law where damages originated, but in equity to serve that public purpose. And it's not, how does your, suppose Boeing hadn't made a penny off this? And suppose it made a lot. What's the difference to your client? How is your client damaged by Boeing making a lot more than it's damaged by Boeing making nothing? Judge Pryor, may I briefly respond? I see that I'm out of time. Yes. Judge Carnes, I understand that the source is in equity, but it doesn't change the fact that numerous treatises and cases describe unjust enrichment as a measure of damages. And the parties here disclaimed categories. That's fine, but if they don't address the issue we're focusing on, particularly under Missouri law, so what? We use language loosely sometimes. I understand. And that's not the argument that AAI made in the district court. It's not the argument they make in this court. They just say they're not contract damages. And it doesn't affect our responsibility to get the law right, regardless of whether they got it wrong in the district court or not, insofar as arguments go. There can be a case directly on point. Everybody overlooks it. It gets to us. And under your approach, we've got to overlook it too, because they didn't argue it. Your Honor, I meant to say also in their briefing in this court, the only argument that they made is that unjust enrichment is not a- Same thing. We can't say, write an opinion. We know this is just wrong as it can be. But these rather slow lawyers just overlooked it. And we can't look at any law they don't point out to us. Yes, Your Honor. And just I would say on the merits, I think that in the same way that lost profits are consequential, unjust enrichment damages are turned on the consequence of Boeing having been awarded the contract. And so under the plain language of this agreement, unjust enrichment damages would still be disclaimed by the parties. I understand. Just so you know, that's not a forfeiture argument. Yes, Your Honor. That's to the merits. Yes, Your Honor. To all the merits, we don't think that unjust enrichment damages are available in light of the way these unjust guarantees were presented, which were the flip side of the same coin of lost profits. There may be unjust enrichment damages- That's a long sentence. Thank you, Ms. Miller. Thank you, Your Honor. We ask that you affirm. Briefly, on the unjust enrichment point, if you look at the MOA section 11.1, they refer to damages that the breaching party suffered. That's what it's about. Just look at the plain language in the section 11.1. And of course, Your Honor, Judge Collins, we absolutely believe your points on unjust enrichment. I won't waste any more time on that. I think- I'm just shocked, but go ahead. Okay. Thank you, Your Honor. Now, this question about the MOA. MOA is dead. Yes, the MOA is dead. Again, footnote 13 in PIMCO 1, rejected the unified contract approach, looked only to the NDA. And you know what? We would have had a big problem if you look to the MOA language because it was different and it was more limited. But the jury did not find MOA lived on. This is a problem. No one likes to rely on this unified contract. MOA is dead. They awarded damages for breach of contract. If you read that MOA, it terminates when someone disavows the teaming arrangement, which is what Boeing did with its notice. The NDA is what survived. Yes, the NDA did survive. The NDA is what we thought. And that is why we can defer in the court to the NDA and PIMCO 1. NDA has no limitation of liability clause. NDA has a merger clause saying it's the sole document to govern proprietary rights. MOA refers to the NDA and says after the MOA terminates, NDA controls. No limitation of liability in the NDA. It's very important to not get confused. The fact that the NDA is involved in this breach doesn't mean this MOA limitation of liability applies. That contract was gone. This is subsequent wrongdoing. Now, Purcell is important. And one thing that's interesting, they refer to Purcell and say, oh, it says clearly you can have limitations regarding the torts. They keep referring to torts. What kind of torts? Negligence of sure. Negligence and performance of contract. Of course you can. That's established. That's not the same thing as intentional wrongdoing. And this is black letter law. And if you look at the Allak case, it cites black letter law. It cites Corbin. You can find it in the restatement. They refer to intentional torts. I think it's restatement second of contracts 195. It's lost in my papers. But it's clear. Intentional torts and no distinction between sophisticated or not. So it's important. Don't get confused by their reference to negligence. That's not what we have here. We have intentional wrongdoing. Intentional wrongdoing occurring after the MOA was terminated. And that is duties in any event, regardless of the NDA, would give rise to an action. Your Honor, Judge Branch, you asked about the complaint. If you look at our opening brief, pages 15 and 26, there's a long citation to the independent duties. Now, there's reference to my first argument in PIMCA 1 where I'm talking about intertwined with contract, going back to the NDA. Yes, that's the NDA. But you don't need it. You do not need it. So, Jacobson is one of the cases they rely on all over the place. Jacobson has a little bit of messy language in it. But, Your Honors, there's such a thing as dicta, and there's such a thing as holding. And dicta doesn't mean anything in this context. Because the holding in Jacobson was a breach. It was applying the breach of contract. It was applying the limitation to that only. And the NH case bankruptcy decision, recognize that there was a differing opinion from the district court. And also, it's expressed language when you look at the holding that case. It is performance of the contract. Negligence relating to the performance of the contract. That language is in there. And there's no case. They've cited absolutely no case that has under Missouri law or anywhere else. That I can dream of. I know it certainly isn't Missouri law. Alloc is Missouri law. You cannot limit your liability for an intentional tort under Missouri law, much less the statutory tort of the Missouri Uniform Trade Secrets Act. For these reasons, we ask the court to reverse again, send it back for expeditious proceedings on to trial. This case is 15 years old. Thank you, counsel. Our next case.